[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]
 United States Court of Appeals
 For the First Circuit

No. 97-1890

 UNITED STATES,

 Appellee,

 v.

GEORGE ASAMOAH, A/K/A KOJO BOAYITEY, A/K/A KWADWO BOAYITEY,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Lynch, Circuit Judge.

 Mark J. Gillis on brief for appellant.
 Donald K. Stern, United States Attorney, and Kevin P. McGrath,
Assistant U.S. Attorney, on Motion for Summary Disposition for
appellee.

January 6, 1999

 Per Curiam. The United States has moved for
summary disposition in this direct criminal appeal, contending
that the only issue presented is a claim of ineffective
assistance of counsel. As such, the government argues, we must
dismiss the appeal and direct defendant George P. Asamoah to
file a motion under 28 U.S.C. 2255. A careful reading of the
brief prepared by defendant's appellate attorney, however,
reveals that counsel is not making such a claim. Further, the
government ignores the pro se supplemental brief filed by
defendant. In this brief, defendant raises four other claims
that are appropriate for direct appeal. We therefore address
these claims now.
 1. Colloquy Regarding Right to Testify
 In Siciliano v. Vose, 834 F.2d 29 (1st Cir. 1987), we
held that the Constitution does not require a trial judge, sua
sponte, to personally address a criminal defendant, to explain
to that defendant that he or she has the right to testify, and
to ascertain that the defendant chooses to waive that right. 
Id. at 30. Other courts of appeals agree. See United Statesv. Ortiz, 82 F.3d 1066, 1071 (D.C. Cir. 1996); United States v.
Pennycooke, 65 F.3d 9, 11 (3rd Cir. 1995); Ortega v. O'Leary,
843 F.2d 258, 261 (7th Cir. 1988). Thus, we held, "a criminal
defendant must claim his privilege or right to testify by
attempting to take the stand or it is waived." Siciliano, 834
F.2d at 30 (internal quotation marks and citation omitted).

 -2-
 Here, defendant was silent all through the trial. 
Further, nothing in the trial record gives any indication of
problems in the attorney-client relationship. Indeed, in this
respect, we note that during opening argument, defendant's
trial attorney plainly stated, and presumably defendant heard,
that defendant "may or may not testify here." See id. (noting
that defendant had heard the trial judge state that defendant
"may testify"). Rather, defendant waited until sentencing,
where he made the following statement: "[M]y lawyer made it
known to me that he is the one who has to review the facts of
what is happening to the Court, and that I have no right to get
on the stand, and there was no point for me to say anything."
 Under Siciliano, defendant's statement was not enough
to obligate Judge Harrington to conduct a colloquy regarding
defendant's waiver of the right to testify. That is, defendant
did not "attempt to take the stand" at trial, which is when
Siciliano requires that a defendant assert the right. SeeSiciliano, supra. Further, defendant waited until the
disposition hearing on June 11, 1997 over three months afterthe trial had ended to raise the question. Finally, we add
that defendant still can litigate this issue if he, in fact,
files a 2255 motion claiming ineffective assistance regarding
his trial attorney's alleged advice that he could not testify.
 2. Stipulation Regarding the Amount of Heroin
Carried by Co-defendant Emelia Dadzie
 At the beginning of trial, the prosecutor read into
the record an agreement entered into by defendant and the
government in which they stipulated that the heroin seized from
Dadzie weighed 816.3 grams and was from 76% to 82% pure. Judge
Harrington did not ask defendant whether he personally had
agreed to this stipulation. Defendant now maintains that the
lack of a colloquy on this point violated his due process
rights.
 The cases defendant cites in support of this
argument, however, are inapposite. Rather, they all concern
stipulations or admissions of prior convictions in the context
of sentence enhancements. See, e.g., Johnson v. Cowley, 40
F.3d 341, 346 (10th Cir. 1994) (holding that a remand was
required where defendant's state trial counsel had stipulated
to defendant's prior conviction and there was no evidence in
the record that defendant had agreed to the stipulation);
Government of the Virgin Islands v. George, 741 F.2d 643, 648
(3rd Cir. 1984) (under the Virgin Islands procedure for
sentencing habitual criminals, the trial court, before asking
a defendant whether he or she has been previously convicted,
"must inquire into, and make a determination of, the
defendant's understanding of the consequences of that
admission); Cox v. Hutto, 589 F.2d 394 (8th Cir. 1979) (per
curiam). Even were we to consider adopting a Cox-type rule, it
would not apply here.
 First, the stipulation regarding the weight of the
cocaine carried by Dadzie plainly was not the "functional
equivalent of a guilty plea" i.e, it did not leave the trial
court with nothing to do but enter judgment and impose
sentence. Further, the stipulation directly concerned Dadzie,
not defendant. That is, the government still had to prove that
defendant was connected to Dadzie and to the cocaine she had
imported into this country. Given this, we cannot see that any
of defendant's rights were violated by the stipulation in this
case.
 3. Sentencing Errors
 a. Amount of Heroin Used for Sentencing -- 816.3 or
700 Grams. Defendant argues that Judge Harrington erred by
using, for the initial calculation of defendant's base offense
level (BOL), the 816.3 grams of heroin Dadzie had carried in
July 1993. Rather, defendant contends, the judge should have
used 700 grams the amount Dadzie testified that she had been
told she would be carrying. The problem with this argument is
that it makes no difference which quantity was used because the
BOL was the same for both amounts.
 First, where a crime involves at least 700 grams, but
less than 1 kilogram, of heroin, the resulting BOL is 30. 
U.S.S.G. 2D1.1(c)(5). Thus, 700 grams and 816.3 grams yield
the same result. Further, when the additional 500 grams of
heroin is added to either amount -- for a total amount of 1200
and 1316.3 grams respectively, defendant's BOL is 32 for bothamounts. See id. 2D1.1(c)(4) (at least 1 kilogram of heroin,
but less than 3 kilograms of heroin). Any error, therefore,
would be harmless. See United States v. Young, 78 F.3d 758,
763 n.4 (1st Cir. 1996).
 b. Distribution to Government Agent. Defendant
argues that since both Dadzie and co-defendant Eric Sekyere
were government agents at the time of most of the events
underlying the conspiracy at hand, the heroin carried by Dadzie
on July 24, 1993, should not have been counted at all for
sentencing purposes. In support of this argument, defendant
cites United States v. Reyes, 979 F.2d 1406 (10th Cir. 1992). 
Reyes, however, does not have anything to do with whether an
individual's status as a government agent affects the amount of
drugs which can be attributed to a defendant in calculating his
or her sentence. Because defendant cites no other authority
for this questionable proposition, his argument must be
rejected.
 c. The Extra 500 Grams of Heroin. Defendant
contends that there was insufficient evidence to connect him to
Dadzie's February 1993 importation of 500 grams of heroin. 
"Absent a mistake of law, we review only for clear error the
district court's conclusions that drugs were part of the same
conduct or scheme or plan." Young, supra, 78 F.3d at 763. 
Under U.S.S.G. 1B1.3, "relevant conduct" includes all acts
"that were part of the same course of conduct or common scheme
or plan as the offense of conviction . . . ." In order for two
offenses to be considered part of a common plan or scheme,
"they must be substantially connected to each other by at least
one common factor, such as common victims, common accomplices,
common purpose, or similar modus operandi." U.S.S.G. 1B1.3,
comment. (n.9(A)).
 Here, Judge Harrington had the testimony of Dadzie
that she had brought heroin into the United States at
defendant's behest in February 1993. That Dadzie knew
defendant prior to the July 1993 importation also is
corroborated by the testimony of Patrick Barkerswoode that he
had introduced defendant to Dadzie in 1991. The decision to
credit the testimony of Dadzie was within Judge Harrington's
"exclusive province." See United States v. Conley, 156 F.3d
78, 85 (1st Cir. 1998).
 As a result of the foregoing, it is plain that the
February and July importations involved two common factors: a
common accomplice and a common modus operandi. Further, as for
defendant's argument that the February importation was not
reasonably foreseeable by him, suffice it to say that "[a]
defendant simply cannot be heard to complain that he could not
reasonably foresee acts that he himself engineered." Id. 
There was no clear error, then, in crediting defendant with the
extra 500 grams of heroin.
 The judgment of the district court is affirmed. SeeLocal Rule 27.1. Any ineffective assistance claims must be
raised in a 2255 motion. See United States v. Mala, 7 F.3d
1058, 1063 (1st Cir. 1993) ("the trial judge, by reason of
familiarity with the case, is usually in the best position to
assess both the quality of the legal representation afforded to
the defendant in the district court and the impact of any
shortfall in that representation").